**Conrad BELL, Jr., Plaintiff,**

**v.**

**The AETNA CASUALTY & SURETY CO., Defendant.**

**Civ. No. 86–62.**

United States District Court
D. Puerto Rico.

March 31, 1966.

Nachman & Feldstein, San Juan, P. R., for plaintiff.

Geigel & Silva, San Juan, P. R., for defendant.

RUIZ-NAZARIO, Chief Judge.

This action having been tried by the Court without a jury, the Court, having considered the testimonial and documentary evidence adduced, as well as argument of counsel, and being duly advised in the premises, hereby makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff, Conrad Bell, Jr., is domiciled in and a resident of New York, New York.

2. Defendant, Aetna Casualty & Surety Co., is a corporation organized and existing under the laws of the State of Connecticut, whose principal place of doing business is outside the Commonwealth of Puerto Rico. The amount in controversy exceeds the sum of $10,-000.00 exclusive of interest and costs.

3. This action was commenced on March 6, 1962.

4. The cause of action on which this action is predicated accrued sometime in the month of January, 1962.

5. Plaintiff Bell was the owner of and operating the yacht "Scampi", on February 18, 1960, when said vessel ran aground at Barbuda, B.W.I. At the

time of this grounding the "Scampi" was covered by Policy No. YC 196712, issued by defendant, for $15,000.00 respective Hull Insurance. The said Policy contained the following limitation clause:

"Time for Suit—It is a condition of this policy that no suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve months next after the time a cause of action for the loss accrues."

6. The next day after the grounding, plaintiff notified the Insurer by mail through his broker, C. A. Hansen & Co. in New York City. He then proceeded in the yacht, which was seaworthy, to St. Thomas in the American Virgin Islands, where he received a cablegram from the insurer instructing him to have a survey of the yacht made. The yacht was surveyed by Lloyd's after which plaintiff attempted repairs at several yards which could not undertake such repairs, because they were not equipped for the work. He then, upon the suggestion of one Mr. Peterson, the Lloyd's surveyor, and one Captain Hallett, and after notifying the insurer, brought the yacht to the Leeward Isle Boat Yard, Isla Grande, San Juan, Puerto Rico.

7. The damage found, according to a survey made by Captain J. A. Potts, Marine Surveyor, as of June 1, 1960, was as follows:

a. Hull planking, port and starboard sides from keel to sheer strake covering 12 frame spaces in the midship section, fastenings loose.

b. Hull planking port and starboard sides badly scored and shaffed at midship section over area of approximately 16 frame spaces.

c. Frames at port side approximately 18″ above gardboard, frames 1, 2, 3, and 4, forward of after bulkhead of midship cabin broken. 3rd, 4th, 5th, and 6th frames on starboard side, forward of midship bulkhead, broken.

d. Chain plates, 4 on each side, noted to be loosen.

e. Main mast noted to be split and cracked in several places, and broken at upper spar in way of yard and rigging collar.

f. Riggins—mostly ⅜″ galvanized wire noted stretched and after stay on the port side of main mast stranded.

g. Bulkwark around deck cracked in several places in both port and starboard sides, and fastenings loosen.

h. Galley woodwork twisted and out of shape and pushed away from bulkhead.

i. Ice box liner in interior of box, torn and away of ice box.

j. Interior of cabin at forward end of galley space, bulkhead at forward end of galley space, away of skin of vessel. Doors sprung, lockers, 2, in main cabin and fitting frames sprung and splintered.

k. Canvas decking on trunk cabin deck in way of main mast, damaged.

l. Interior of cabin in general soiled and scored.

8. Work commenced on the "Scampi" at the Leeward Isle yard, and although regular bills were not rendered, plaintiff paid the yard as the work progressed.

9. The Leeward Isle yard bills paid by plaintiff for repair of damage to the yacht "Scampi" add up to the sum of $8,105.54.

In addition, as a result of Leeward Isle having filed suit for collection of some $6,056.25, it was necessary for plaintiff to post a bond for $6,500.00 in order to release the yacht from attachment. The bond premiums cost $280.00.

Plaintiff employed counsel to resist the claim, and it was settled for $1,300.00.

10. Other items paid by plaintiff, chargeable to the repair of damage suffered by the "Scampi", such as new mast for the vessel, miscellaneous items, costs, surveys, amount to $1,985.07.

11. Certain repairs consisted in new material to substitute original material in the yacht. I find that this item, which is not chargeable to the defendant, amounts to $300.00.

12. In June, 1960, when the shipyard bills already exceeded $5,000.00, plaintiff received the sum of $5,000.00 from defendant. Subsequently, when plaintiff received a bill for another $3,000.00 and brought it to the attention of defendant, the latter asked him that if he needed any more money, they were willing to advance it, but he replied that they should wait until the repair job was terminated, that it would cost $895.00 to finish with the boat, and they would "square away" when he returned.

13. The last conversation plaintiff had with representatives of the defendant was in January 1962, when he was given to understand that no more would be paid by the defendant, in addition to the original $5,000.00 advanced, plus an additional $2,500.00 the defendant had offered to pay some time before this last conversation of January 1962. I find that the period of limitation contained in paragraph four of the General Conditions of the Policy, commenced to run from the moment plaintiff was informed that the defendant would not pay any more on the policy, in addition to the $5,000.00 advance, and the $2,500.00 additional offered. Plaintiff's cause of action then accrued, as that was the moment in time when a breach of the obligation of the policy occurred: January, 1962.

14. Plaintiff and his son personally labored in the repair of the yacht "Scampi". This work was reasonably worth $2,000.00.

15. $5,000.00 (the sum advanced) from $10,091.61 leaves a balance of $5,091.61; the further deduction of $300.00 (repairs unconnected with the grounding) leaves a balance due of $4,791.61, plus $2,280.00 (personal labor of plaintiff and son,) plus bond premium, (in action which inured to defendant's benefit) gives a grand total of $7,071.61 due plaintiff under his policy herein.

16. Defendant was obstinate in this action, and under the circumstances which have prevailed herein, I find that $2,000.00 is a reasonable sum for attorney's fees.

## CONCLUSIONS OF LAW

I. This Court has jurisdiction in this case pursuant to 28 U.S.C.A. 1332, because of diversity of citizenship of the parties and because the amount in controversy exceeds the sum of $10,000.00.

II. This action is not barred by the provisions of paragraph four of the Policy under which plaintiff has sued.

III. Plaintiff is entitled to have and recover the sum of $7,071.61 from defendant pursuant to the Insurance Policy herein, plus $2,000.00 reasonable attorney's fees, and the costs of this action.

IV. Judgment will be rendered accordingly.